UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
OCT 19 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| MASSIMILIANO PINCIONE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:11-cv-00367 (AJT/IDD) |
| DAVID DALE, | ) |
| Defendant. | ) |
| DAVID DALE, et al., | ) |
| Counterclaim Plaintiffs, | ) |
| v. | ) |
| MASSIMILIANO PINCIONE, et al., | ) |
| Counterclaim Defendants, | ) |

### REPORT AND RECOMMENDATION

This matter is before the Court on Defendant David Dale's ("Dale" or "Defendant") Motion for Leave to Amend the Counterclaims (Dkt. No. 29). After a review of the parties' briefs and argument on Defendant's motion, the undersigned Magistrate Judge recommends that this Court DENY the Defendant's Motion for Leave to Amend Counterclaims.

### I. INTRODUCTION

On April 7, 2011, Massimiliano Pincione ("Plaintiff" or "Pincione") filed the Complaint in this matter alleging that the Defendant has defamed Plaintiff by making false statements that

Plaintiff forged documents in connection with a contract for debt collection services that it had with SMI Hyundai Corporation Ltd. ("SMI"). Compl. ¶¶ 1, 5, 7. On May 3, 2011, Defendant filed an Answer to the Complaint. Defendant also filed Counterclaims against Plaintiff and H.R.R. Prince Khaled Bin AlWaleed ("Prince Khaled") alleging claims for breach of contract, breach of fiduciary duty, fraud and conversion and seeking to add SMI as a counterclaim plaintiff in this case. Dkt. No. 7. Plaintiff then filed a motion to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 10. On July 15, 2011, the Honorable Anthony J. Trenga, United States District Judge, granted Plaintiff's motion and dismissed the counterclaims, but allowed Defendant to file, at his choosing, a motion for leave to amend his counterclaims within fourteen days of the Court's Order. Dkt. No. 26.

On July 29, 2011, Defendant filed this Motion for Leave to Amend Counterclaims and attached a Proposed Amended Counterclaim Complaint ("Amended Counterclaims") again alleging breach of contract, breach of fiduciary duty, conversion, and fraud and adding claims for tortious interference, statutory conspiracy and racketeering under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Dkt. No. 29; *See* Am. Countercl. The Amended Counterclaims also seek to add SMI as a Counterclaim Plaintiff. *See* Am. Countercl. After reviewing the briefs submitted by the parties and hearing argument on the motion at the August 19, 2011 hearing, the undersigned Magistrate Judge took the matter under advisement to issue this Report and Recommendation.

## II. EVALUATION OF PLAINTIFF'S AMENDED COMPLAINT

A party seeking to amend his complaint after an opposing party has filed a responsive pleading, may do so only with the consent of the opposing party or the court's leave. Fed. R.

2

Civ. P. 15(a)(2). The court's leave should be given freely when justice so requires. *Id.* Federal Rule of Civil Procedure ("FRCP") 15(a)(2) is applied liberally, and a party will be allowed to amend his claims unless doing so would be prejudicial to the opposing party, the party has acted in bad faith, or amendment of the claims would be futile. *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010).

This Court will deny a motion for leave to amend a counterclaim as futile when the proposed claim could not survive a Rule 12(b)(6) motion to dismiss. *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420-21 (4th Cir. 1995). To survive a 12(b)(6) motion to dismiss, a complaint must assert plausible facts that, if accepted as true, provide a basis on which relief may be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A reviewing court must use its judicial experience and common sense to determine whether the facts stated present a plausible claim for relief. *Id.* at 1949. A recitation of the elements of the claims and legal conclusions in a complaint are insufficient to satisfy this plausibility standard of pleading. *Iqbal*, 129 S. Ct at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### A. *Tortious Interference (Count 1)*

In the Amended Counterclaims, Dale asserts a claim against Pincione for tortious interference with business expectancy. Am. Countercl. ¶¶ 33-43. Under Virginia law, an individual bringing a claim for tortious interference must allege: "(i) the existence of a valid contractual relationship or business expectancy, (ii) knowledge of the relationship or expectancy on the part of the interferor, (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (iv) resultant damage to the party whose

relationship or expectancy has been disrupted." *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 145, 670 S.E.2d 704, 706 (2009) (citations omitted). The Supreme Court of Virginia has held that "the interferor's [sic] knowledge of the business relationship and his intent to disturb it are requisite elements" of a prima facie claim for tortious interference. *Chaves v. Johnson*, 230 Va. 112, 120-21, 335 S.E.2d 97, 102 (1985). In *DurretteBradshaw*, the court held that Comment (j) to § 766 of the Restatement (Second) of Torts is instructive. *DurretteBradshaw, P.C.*, 670 S.E.2d at 707. Citing Comment (j), the court stated that the rule

> applies also to intentional interference ... in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.

*Id.* at 707 (citing 37 AMERICAN LAW INSTITUTE, Restatement of the Law, Second, Torts § 766 (1979)).

Dale alleges that he had a valid contract with SMI for the collection of debt owed to SMI for construction services that it provided to the Libyan government. Am. Countercl. ¶¶ 14, 33. Pincione asserts that Judge Trenga has previously ruled that Dale has no rights under the contract between SMI and Global Development Trust, Ltd. ("Global Development") (hereinafter, the contract between SMI and Global Development will be referred to as the "SMI/Global Development Agreement"); therefore, allowing him to amend his Counterclaims to add a claim for tortious interference with a business contract would be futile. Pl./Countercl. Def.'s Opp. Mot. Am. Countercl. 9. Dale now asserts that he has rights under the SMI/Global Development Agreement based upon his allegation that "[a]s the promoter of the nominal contracting party

4

[Global Development], which is a corporation yet to be formed, Dale is the real party in interest, and may sue in his own name, to protect the contracting interest." Am. Countercl. ¶ 36.

Dale's contention that he is a party to the agreement with SMI is based on his reliance on the decision from the Supreme Court of Virginia in *Strause v. Richmond Woodworking Co.*, 65 S.E. 659, 661 (Va. 1909). In *Strause*, the court stated that "those dealing with promoters should be left with the double security of the promoter and the company, when one is formed, unless it clearly appears that the liability of the promoter was not intended, or that it was intended to be released when the liability of the corporation began." *Id.* Dale argues that if he could be personally liable as a promoter under the contract with SMI, then he must have standing to sue for the enforcement of that contract in order to protect the corporation's interest. Def./Countercl. Pl.'s Reply Mot. Am. Countercl. 5. The Supreme Court of Virginia has not considered this issue.

Even if this Court were to accept Dale's position that he is a party to the SMI contract, his claim for tortious interference with business expectancy would still be futile because Dale has failed to allege sufficient facts to support his assertion that he was entitled to receive funds under the contract in his individual capacity. Global Development is the named party entitled to receive funds from SMI for the performance of collection services. Opp., Exh. D. Dale signed the agreement with SMI in his capacity as founder and first president of Global Development. *Id.* Dale has not cited any case law from Virginia or the Fourth Circuit, and this Court has not found any, that would support the position that Dale is entitled to receive funds as a promoter under a contract between Global Development and SMI because the corporation was never formed. In fact, the general rule is that because promoters are fiduciaries to the corporation, they are not permitted to earn profits from transactions that they conduct on behalf of the corporation

5

without the consent of the corporation or its shareholders. *Burneagle Coal & Coke Corp. v. Henritze*, 139 Va. 442, 425 (1924); *Central Land. Co. v. Obenchain*, 22 S.E. 876, 880 (Va. 1895). This case law is instructive in determining whether Dale has a right to recover funds owed to an unformed corporation in his individual capacity. It appears that while a court could find that a promoter has standing to sue a party to enforce a contract between that party and the corporation that has yet to be formed, nothing appears to support Dale's position that he can receive funds in his individual capacity under the SMI/Global Development Agreement. Based on this reasoning, and the facts pled in the Counterclaim, this Court finds that Dale has not alleged sufficient facts to show that he had a personal business expectancy under the SMI/Global Development agreement such that he can now counterclaim against Pincione for interfering with that contract by improper means or for some improper purpose. Accordingly, Dale's Motion should be denied as to Count I.

### B.   *Breach and Repudiation of the PKMP Agreement (Count II)*

Dale also seeks to re-plead a claim for breach of contract in the Amended Counterclaim. Am. Countercl. ¶¶ 44-52. Dale alleges that in two parallel agreements executed as parts of a single transaction on September 24, 2009, Pincione, Prince Khaled, Dale, and SMI entered into a contract whereby Pincione, Prince Khaled and Dale would work together to collect a Libyan debt owed to SMI. Am. Countercl. ¶¶ 16, 17. These agreements were allegedly "interlocking contracts" under which Dale was a third party beneficiary because the agreements provided him with an "identifiable interest in the subject matter of the PKMP Agreement."[1] Am. Countercl. ¶ 52. Dale contends that under the PKMP Agreement "he gave consideration in the form of the

---

[1] "PKMP Agreement" refers to the Agreement executed between SMI, Pincione, and Prince Khaled. Am. Countercl. ¶ 18.

promises in and performance under the [SMI/Global Development] Agreement, and specifically had an identified interest in the proceeds obtained through the parties' efforts under the PKMP Agreement." *Id.* Dale further alleges that Pincione and Prince Khaled failed to perform under an April 9, 2010 Agreement that required them to pay SMI the monies collected from the Libyan government subject to a twenty percent (20%) fee that SMI was to pay them for services performed in collecting the debt. *Id.* ¶¶ 23, 44, 46, 48.

The PKMP Agreement states that it shall be "interpreted [under] and subject to the laws of the State of New York." Opp., Exh. B ¶ 11. Under the laws of New York, a plaintiff bringing a breach of contract claim as a third party beneficiary must allege "(1) the existence of a valid and binding contract between other parties; (2) that the contract was intended for his benefit; and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 469 (N.Y. 1983).

Furthermore, documents are considered interlocking agreements such that they constitute one agreement where the agreements are executed contemporaneously by the same parties and involve the same subject matter. *Marsh v. Dodge*, 66 N.Y. 533, 537-38 (1941). However, the rule for interlocking agreements is such that it does not require that all of the agreements be executed by all of the same parties. *Nau v. Vulcan Rail & Constr. Co.*, 36 N.E.2d 106, 110 (N.Y. 1941). Nevertheless, where two agreements contain integrated clauses designating each as a complete separate agreement and where the agreements do not cross-reference each other, such agreements are not likely to be deemed as two parts of one agreement. *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F.Supp. 712, 731-32 (S.D.N.Y. 1989).

Dale has failed to allege sufficient additional facts to overcome this Court's previous finding that he is not a third party beneficiary under the PKMP Agreement or the SMI/Global Development Agreement. The two Agreements, though executed on the same day by substantially the same parties, only overlap as to the general subject of collection efforts on monies owed to SMI. The Agreements neither cross-reference each other nor state that Pincione and Prince Khaled would work with Global Development to collect on behalf of SMI from the Libyan government. Essentially, separate parties entered into separate contracts with the same party to collect the same debt. Dale asserts that applying common sense, the Court would look at the overall circumstances and purposes of the bargain and see that the two agreements should be read together. Reply 10. However, considering the circumstances and contract law, common sense has led this Court to the conclusion that if the parties intended Pincione, Dale, and Prince Khaled to work together to collect debt for SMI, such intention would be expressly stated in either one or both of the agreements.

Even were this Court to accept as true the conclusion that the PKMP and SMI/Global Development Agreements were designed to be interlocking agreements, Dale's breach of contract and repudiation claim must still fail because he has failed to allege sufficient facts to show that Dale, in his individual capacity, was an intended beneficiary under either one or both of the Agreements. As previously discussed, nothing in the SMI/Global Development Agreement allows Dale, in his individual capacity, to recover monies from SMI in connection with collection services to be performed by Global Development. In addition, Dale is not named or identified as a third party beneficiary to the PKMP Agreement. Judge Trenga stated at the July 15, 2011 hearing on Plaintiff's motion to dismiss that because the contracts have separate

integration clauses and do not directly, or by implication, name Dale as a beneficiary, Dale is not a third party beneficiary to the contracts. Mot. Dismiss Hr'g Tr. 16:9-18, July 15, 2011. Dale has failed to plead any new facts that would alter the Court's finding in that regard. Accordingly, Dale has failed to allege sufficient facts to support a plausible breach of contract claim. Therefore, this Court should deny Defendant's Motion as to Count II of the Amended Counterclaim.

### C. *Statutory Conspiracy (Count III)*

Defendant asserts a claim for conspiracy to harm business, trade, or profession under Virginia Code §§ 18.2-499 and 500 in the Amended Counterclaim. Am. Countercl. ¶¶ 53-59. The Virginia Code provides a cause of action for "any person who shall be injured in his . . . business by reason of a violation of § 18.2-499." Va. Code Ann. § 18.2-500. Section 18.2-499 states that it is illegal for "any two or more persons . . . [to] concert together for the purpose of willfully and maliciously injuring another in his . . . business by any means whatever . . . ." Va. Code Ann. § 18.2-499. A plaintiff bringing suit under § 18.2-500 must allege that the defendant either engaged in some unlawful act or had an unlawful purpose. *Station # 2, LLC v. Lynch*, 280 Va. 166, 173, 695 S.E.2d 537, 541 (2010).

Dale alleges that Prince Khaled and Pincione conspired with each other and others to harm him. Am. Countercl. ¶ 55. He further alleges that they conspired for the purpose of interfering with his contract rights and that they carried out the conspiracy by the unlawful acts of

> misrepresenting their intentions in preliminary negotiations with Dale and SMI; contracting with SMI on false pretenses and by false promise; operating at all times in the execution of a scheme or artifice to defraud, or obtain money or property by false or fraudulent pretenses . . . in violation of 18 U.S.C. §§ 1341, 1343, and 2314 . . . .

9

Am. Countercl. ¶ 58. Dale further alleges that this conspiracy damaged him by diminishing the value of his contract rights under the SMI/Global Development Agreement. Am. Countercl. ¶ 59. As previously stated, Dale has no contract rights, in his individual capacity, under the SMI/Global Development Agreement. Furthermore, to the extent that Dale was to be the first president of Global Development and he asserts he incurred expenses under the SMI/Global Development contract in that capacity, his claim must still fail.

In that regard, in *Jordan v. Hudson*, 690 F.Supp. 502, 507 (E.D. Va. 1988), *aff'd, Jordan v. Hudson*, 879 F.2d 98, 100 (4th Cir. 1989), the court dismissed plaintiff's claims for failure to state a claim where plaintiff alleged that his co-workers conspired to injure him in violation of § 18.2-499 and that such actions caused damage to his employment interests. Since this Court finds that Dale has no individual rights under the SMI/Global Development Agreement, the only other interests that he might have in relation to that agreement would be his right to be compensated by Global Development as a promoter or president of Global Development for performing in that capacity. These interests are employment interests, and therefore are not "business" interests within the meaning of § 18.2-500. Accordingly, Defendant has failed to plead sufficient facts to support a plausible claim under Va. Code. §§ 18.2-499 and 500. Defendant's motion should be denied with respect to Count III.

### D. Fraud

Dale also seeks to re-plead his fraud claim. Specifically, he alleges that, to his detriment, he relied on "the good faith and loyalty of [Prince Khaled and Pincione], in acting upon the arrangements made under the parallel agreements." Am. Countercl. ¶ 61. In that regard, Dale asserts that he entered into the SMI/Global Development Agreement in reliance on their good

faith negotiations. He further alleges that the false representation of SMI to the Libyan government had hindered SMI's ability to collect current remaining monies due and owed to it such that the value of Defendant's contract with SMI is reduced. Am. Countercl. ¶ 30. Defendant further alleges that Prince Khaled and Plaintiff misrepresented their intentions to him because they never intended to collect debt in accordance with their contractual obligations to cooperate honestly with Defendant in his efforts to collect the Libyan debt. Am. Countercl. ¶¶ 28, 29.

In Virginia, a plaintiff asserting a fraud claim must allege: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly by defendant, (4) with the intent to mislead, (5) plaintiff's reliance on the false representation, and (6) that such reliance resulted in damage to the misled party. *See Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994). Again, Dale's claim is deficient in regard to damages sustained by him. The facts alleged in the Amended Counterclaim do not support his assertion that he has been damaged by any alleged failure of Prince Khaled and Pincione to pay SMI monies due under the PKMP Agreement or the SMI/Global Development Agreement because, as previously stated, Dale is not a party to said Agreements and has no individual right to recover under such Agreements. Accordingly, this Court should deny Defendant's Motion in regard to Count IV.

### E.  RICO (Count VI)

The Amended Counterclaim includes a claim for damages under the federal RICO statute, 18 U.S.C., § 1964, for injury to business and property by reason of violation of § 1962. The RICO statute provides, in relevant part, that

> any person injured in his business . . . by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and

11

shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c).

A plaintiff suing under § 1964 must allege that the defendant engaged in a "pattern of racketeering activity." *Id.* § 1961(5). Under the RICO statue, a "pattern of racketeering requires at least two acts of racketeering activity" within ten years. 18 U.S.C. § 1961(5). A plaintiff has properly pled a pattern of racketeering activity where the complaint sets forth facts that "show that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989) (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)). Predicate acts are related under the statue where they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics not isolated events." *Id.* Such acts pose a threat of continued criminal activity where the related acts extend over a substantial period of time; this is known as continuity. *H.J. Inc.*, 492 U.S. at 241-42. Continuity may exist where a plaintiff alleges that the predicate acts "are apart [sic] of an ongoing entity's regular way of doing business." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (citations omitted). However, facts that allege that the predicate acts occurred over the course of a few weeks or few months will be insufficient to show continuity as required under the RICO statute. *Id.*

In *Menasco Inc., v. Wasserman*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), held that the plaintiffs failed to plead sufficient facts to show that defendants engaged in a pattern of racketeering activity where the alleged scheme involved only the

defendant and the plaintiffs, the defendant's alleged purpose was to defraud only those plaintiffs, and the transaction occurred over the course of one year. 886 F.2d at 684. The Fourth Circuit stated that such acts did not constitute "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.* (citations omitted). Similarly, in *GE Inv. Private Placement Partners II v. Parker*, the Fourth Circuit affirmed the lower court's dismissal of plaintiffs' RICO claim finding that plaintiffs failed to allege facts to show that the defendant's alleged fraudulent scheme involved more than a single transaction over a limited time period. 247 F.3d at 549. The Fourth Circuit has made it expressly clear that allegations of a pattern of racketeering activity are essential to prevent the harsh penalties of the RICO statute, like treble damages, from being applied to defendants who may only be liable for engaging in garden variety fraud. *See Al-Abood v. Elshamari*, 217 F.3d 225, 238 (4th Cir. 2000) (citations omitted); *see also Menasco, Inc. v. Wasserman*, 886 F.2d at 685 (citing *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988)).

Dale alleges that the predicate acts that constitute racketeering activity include a scheme to defraud Dale of "tangible property rights or for obtaining money or property by means of false or fraudulent pretenses" in violation of 18 U.S.C. §§ 1341, 1343, 1344, and 2314. Am. Countercl. ¶ 74(a)(1). Furthermore, he asserts that Plaintiff and Prince Khaled used mails or private interstate carrier to exchange the PKMP Agreement, which Plaintiff alleges Prince Khaled and Plaintiff entered into under false pretenses. Am. Countercl. ¶ 74(a)(2). In addition, Dale alleges that Plaintiff used wire and other electronic transmissions to transmit an alleged May 7 forgery of Peter Jung's, officer of SMI, signature in furtherance of a scheme to obtain monies owed to SMI. *See* Am. Countercl. ¶¶ 9, 12, 24, 32, 74(3). Dale asserts that these acts

constitute a "pattern of racketeering activity" because Pincione and Prince Khaled's "existence and operations of a similar nature predated their dealings with Dale and SMI, and continues to present, and [their] activities in connection with Dale and SMI create the threat of continuing consequences to SMI in connection with its Libyan business interests, including further collections on Libyan debt." Am. Countercl. ¶ 76.

It would be futile for this Court to allow Dale to amend his Counterclaim to add a RICO claim because he has failed to allege sufficient facts to show that Pincione and Prince Khaled engaged in a pattern of racketeering activity. Like the plaintiffs in *Menasco*, Dale's allegations appear to be that he and SMI were the targets of Pincione and Prince Khaled's alleged fraud scheme. Therefore, he has not alleged sufficient facts to show that such actions are a part of an "ongoing and regular way of doing business."

Dale's allegations are also similar to those asserted by the plaintiffs in *GE Inv. Private Placement Partners II* because the acts that he has labeled as part of an ongoing scheme are really a part of an alleged scheme to defraud Dale in one transaction, namely the collection of SMI's debt from the Libyan government. Once Pincione and Prince Khaled obtained the monies, the alleged scheme came to an end. Therefore, Dale has failed to allege facts to show that Pincione and Prince Khaled are engaged in "conduct that poses a special threat to social well-being." For these reasons, this Court finds that Dale has failed to allege facts to show a pattern of racketeering activity. Therefore, the Court should deny Defendant's Motion with respect to Count VI.

### F. Joinder of SMI

Finally, Dale seeks to join SMI as a counterclaim plaintiff pursuant to FRCP 13(h), which

provides that a party may be added to a counterclaim under Rules 19 and 20. Judge Trenga stated at the July 15, 2011 hearing and other cases stand for the proposition that if the counterclaimant's claims fail, then another entity may not be joined as a party under FRCP 13 and or Rule 20 for purposes of asserting those same claims. Hr'g Tr. 19:20-20:1; *See Prosperity Sys. Inc., v. Ali*, No. CCB-10-2024, 2011 U.S. Dist. LEXIS 43884, *23-25 (D. Md. Apr. 22, 2011); *see also, Hubner v. Schoonmaker*, No. 89-3400, 1990 U.S. Dist. LEXIS 13035, *12 (E.D. Pa. 1990). Since this Court finds that Dale has failed to plead sufficient facts to support his counterclaims, this Court must also find that he has not met the perquisites under Rule 13(h) for adding SMI to this case as a counterclaim plaintiff. Consequently, this Court should deny Defendant's Motion for Leave to Amend his Counterclaims as to Count V and the addition of SMI as a party in this case.

### III. RECOMMENDATION

For the reasons articulated above, the undersigned Magistrate Judge recommends that Defendants' Motion for Leave to Amend the Counterclaims (Dkt. No. 29) be DENIED because such amendments would be futile in light of the fact that they would fail to survive a 12(b)(6) motion to dismiss.

### IV. NOTICE

**By mailing copies of this report and recommendation, the parties are notified as follows. Objections to this report and recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation**

and waives appellate review of a judgment based on this report and recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

/s/
Ivan D. Davis
United States Magistrate Judge

October 19, 2011
Alexandria, Virginia