## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| Massimiliano Pincione | : | |
| Plaintiff | : | |
| v. | : | |
| David Dale | : | |
| Defendant | : | |
| ****************************************** | | Case No. 1:11-cv-00367 (AJT/IDD) |
| David Dale | : | |
| and | : | |
| SMI Hyundai Corporation Ltd. | : | |
| Counterclaim Plaintiffs | : | |
| v. | : | |
| Massimiliano Pincione | : | |
| and | : | |
| H.R.H. Prince Khaled Bin AlWaleed | : | |
| Counterclaim Defendants | : | |
| ****************************************** | | |

## OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING COUNTERCLAIMS

Defendant, David Dale (hereinafter "Dale"), and prospective Counterclaim Plaintiff, SMI Hyandai Corporation Ltd. (hereinafter "SMI"), hereby object to each and every proposed ruling contained in the Report and Recommendation dated October 19, 2011 (hereinafter the "Report")

1

regarding Dale's counterclaims and SMI's right to join as an additional party to this action, on the grounds that the report overlooks, misapprehends, or misstates the following points of fact or law:

1. The principal ground stated by the Report for recommending denial of Dale's right to plead counterclaims concerns a point that was not briefed by either side, viz., the assertion that Dale, as a promoter and therefore fiduciary, would not be entitled under the SMI-Dale (Global Development) contract to "receive funds in his individual capacity" (Report, at 6). This assertion is incorrect as a matter of both fact and law. As a matter of fact, it wrongly assumes a pleaded "capacity" that does not exist in the proposed amended counterclaims, and that does not exist in fact, because Dale, though a promoter and therefore fiduciary to the unformed corporation, also was the founder and ultimate owner of the corporation, as was shown on the face of the contract. As a matter of law, the distinction asserted by the Report does not exist in the law governing a proper party to sue, which recognizes the right of a fiduciary to sue in his own name under either state law concerning corporate promoters and other fiduciaries or the federal procedural law concerning real parties in interest.

The governing procedural rule, which is Rule 17(a) of the Federal Rules of Civil Procedure, was intended to abolish the distinction between legal and equitable interests, and allows fiduciaries to sue in their own names, with or without joinder of their beneficiaries. *See generally* 6A Wright, Miller, Kane and *Federal Practice and Procedure* §§ (2011). This can be by the non-exclusive enumeration of parties who "may sue in their own names without joining the person for whose benefit the action is brought," Fed.R. Civ. P. 17(a)(1), as including executors, administrators, guardians, bailees, trustees, and "a party with whom or in whose name a contract has been made for another's benefit," Fed. R. Civ. P. 17(a)(1)(F). The enumerated list

is intended to be illustrative only of the more general principle, *see* Advisory Committee Note to 1966 Amendment to Rule 17.

Furthermore, Fourth Circuit case law under Rule 17 confirms its application to permit actions by a mere agent who makes a contract for the benefit of another, in those instances where the agent would be liable on the contract. This was the holding of *Costanzo Coal Mining Co. v. Weirton Steel Co.*, 150 F.2d 929, 937 (4th Cir. 1945), citing, inter alia, Rule 17(a). Part of the rationale of *Constanzo* was the general law of agency, which makes an agent for a yet-to-be-formed principal a party to the contract, and entitled to sue for performance. That remains a part of agency law today, and the "classic" instance of that rule is the corporate promoter. *See Restatement (Second) of Agency*, § 326 and Comment b; *Restatement (Third) of Agency*, § 6.04 and Comment c.

As we showed in the previous briefing, and as the Report now apparently concedes (*see* Report at 5), Virginia follows the majority rule as to corporate promoters. While the Report apparently means to cast some doubt on the reciprocity of that rule–allowing promoters to sue in their own names, just as they would be liable in their own name–any such ruling would contradict the inherent nature of contractual obligations, which must be reciprocal to be valid. Every source of authority that we have located is in accord (*see* Reply Mem. for Dale, at 3-5), as is *Costanzo*, 150 F.2d at 936 ("this obligation is reciprocal,–the other party is bound to the agent, and in the latter vests a legal interest in the contract, and consequently, a right of action upon it").

If this aspect of the Report's recommended ruling is allowed to stand, it would be the first and only such ruling of which we are aware, in the annals of American jurisprudence. There is no such thing as a non-mutual contractual obligation. There is no such thing as an "individual

3

capacity" or "representative" or "fiduciary" exception to the reciprocal rights and obligations of a corporate promoter. And if there were such a thing, it would not apply here to Dale, who was the alter ego of the contracting corporation to be formed. And if it did apply here, it still would not deprive the fiduciary of the right to sue in his own name under Rule 17(a) and this Circuit's ruling in *Costanzo.*

Accordingly, this aspect of the Report must be rejected. If rejected, it would reverse the result as to all dispositions recommended by the Report, because the same error affects all rulings, with the possible exception of the RICO ruling, which is erroneous on other grounds (see Point 4, below).

2. The Report's recommended rulings also reflect a profound misunderstanding of the "plausibility" pleading standard under the Supreme Court's *Twombly* and *Iqbal* decisions, by applying those standards in essence to substitute its own "common sense" interpretation (Report, at 7) for the inferences to be drawn from the facts as actually pleaded in the proposed amended counterclaims, which must be drawn in favor of the pleader. Furthermore, the Report misconstrues the effect of this Court's previous ruling, as something that Dale was required to "alter" by alleging new facts (Report, at 9), whereas the allegations of the proposed amended counterclaims should have been considered de novo.

3. The Report's recommended ruling on Dale's fraud claim (Report, at 11) reflects a further misunderstanding in both fact and law, as it fails to consider the claim as actually pleaded, which was that Dale's reliance expenses, incurred in reliance on the PKMP-SMI contract, do not depend upon whether Dale did or did not have any right to receive performance under that contract from PKMP. This same error also affects the recommended disposition on Dale's statutory conspiracy claim (Report, at 9-10).

4. The Report's recommended ruling on the RICO claim (Report, at 11-14) also errs as a matter of fact and law. As a matter of fact, the Report does not even consider the actual allegations of repetitious and ongoing wrongdoing actually alleged, which include the past actions by PKMP, the ongoing efforts by PKMP to hide the monies diverted from SMI, which involved a number of other victims, such as the U.S. and foreign banks used as conduits for laundering those funds, and the ongoing impact on SMI's Libyan interests, which have been damaged by PKMP's activities. (See Proposed Amended Counterclaims, ¶¶ 30-32, 59, 76, 78). Instead, the Report presents a caricature of the pleaded facts, apparently intended to bring the case within its interpretation of the previous Fourth Circuit decisions in *Menasco* and *GE Inv. Private Placement*, by pretending that the alleged racketeering had only a "single object" which was now over (see Report, at 12-13), which simply is not true. PKMP's wrongdoing, and its effects on SMI (among others), continue today, and will continue into the future, and this is what is pleaded. It also misrepresents the whole idea of RICO, which is to rectify the penetration of racketeering practices into legitimate businesses.

Accordingly, the Report is legally wrong, for several reasons. First, it fails to grant a favorable inference from well-pleaded facts, which is error at the pleading stage. Second, a miss-construction of the pleaded facts is a serious error in the context of the RICO "continuity" requirement, which is by definition fact-specific (*see* Reply Mem. for Dale, at 7). Third, the cases relied upon by the report have been distinguished on their facts by subsequent cases, as also was argued previously (*see id.*), and not answered by the Report. Fourth, we believe that the Report's application of the cited cases was incorrect, and that the Fourth Circuit never intended to enshrine such vagaries as "special threat to social well-being" (Report, at 14) as an operative

5

rule of statutory construction.  Fifth, if such were the intent of the Fourth Circuit's law, it is inconsistent with the ruling Supreme Court authority of *HJ, Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), which requires only "continuity of racketeering activity, or its threat, simpliciter," *id.* at 241.

5.  The Report errs by failing to consider separately the questions (1) whether SMI should be permitted to join as asserting a claim in the alternative to Dale, under Rule 20; and (2) whether SMI should be permitted to join under Rule 19.  More generally, the Report reflects a hyper-technical approach to joinder that is at odds with the philosophy of the Federal Rules, which is to permit joinder liberally in order to resolve the overall underlying dispute with a minimum of circuity or multiplicity of actions.  Pincione and Khaleed have made off with nearly $18 million that belongs to SMI, which now is owned by Dale.  That underlying conflict is what gave rise to this action, as well as a second companion action against Jung.  Denying SMI the right to join with Dale here encourages Pincione in the improper objective of forcing multiple litigations for no reason other than to make it more difficult and cumbersome for SMI to secure its own property.

6.  Given the nature and number of the errors noted above, the Report should be reconsidered de novo.  Therefore, to the extent not covered in the foregoing objections, we also object to the Report on the grounds that it did not accept each and every point made on behalf of the objectors in their underlying motion papers.

For the reasons stated above, the Report should be rejected in its entirety, and the motion for leave to file the proposed Amended Counterclaims should be granted in its entirety.

Respectfully submitted,

David Dale
By Counsel

_____/s/_____
James R. Tate (VSB #6241)
Douglas E. Bywater (VSB #9137)
Tate, Bywater & Fuller PLC
2740 Chain Bridge Road
Vienna, Virginia 22181
Telephone: 703-938-5100
Facsimile: 703-255-1097
jtate@tatebywater.com
debywater@tatebywater.com

### Certificate of Service

I hereby certify that on the 1st day of November, 2011, a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Angela H. France, Esq.
PCT LAW GROUP, PLLC
1725 Duke Street, Suite 240
Alexandria, VA  22314
afrance@pctlg.com

Jay G. Safer
LOCKE LORD BISSELL & LIDDELL, LLP
3 World Financial Center
New York, NY  10281
jsafer@lockelord.com

_____/s/_____
James R. Tate
Counsel for David Dale